**Richard KIMBALL**

v.

**STATE of Maine.**

Supreme Judicial Court of Maine.

Argued Jan. 15, 1985.

Decided April 5, 1985.

A.2d at 849; *Northeast Bank N.A. v. Crochere*, 438 A.2d 266, 268 n. 6 (Me.1981).

Lipman & Parks, P.A., Barbara L. Raimondi (orally), Augusta, for appellant.

James E. Tierney, Atty. Gen., Joseph A. Wannemacher (orally), Herbert Bunker, Jr., Asst. Attys. Gen., Augusta, for the State.

Before McKUSICK, C.J., and ROBERTS, VIOLETTE, and GLASSMAN, JJ., and DUFRESNE * and WERNICK, A.R.JJ.

---

* Dufresne, A.R.J., sat at oral argument and participated in the initial conference, but did not participate in the final decision.

McKUSICK, Chief Justice.

This is the third time that Richard Kimball has been before the Law Court following his 1979 murder conviction in the Superior Court (Oxford County). His direct appeal from that conviction was denied in *State v. Kimball*, 424 A.2d 684 (Me.1981).[1] In 1982 petitioner and his co-defendant Randolph Lord filed in the Superior Court motions for new trial based on newly discovered evidence. We affirmed the denial of those motions in *State v. Lord*, 458 A.2d 432 (Me.1983). In August of 1983 petitioner Kimball filed pursuant to 15 M.R.S.A. § 2129 (Supp.1984–1985) a petition for post-conviction review in the Superior Court, thus commencing the proceeding that is now before this court on appeal. Kimball's post-conviction petition alleges that he was not provided effective assistance of counsel either at his murder trial or on appeal from the denial of his motion for new trial. The Superior Court denied the claim that Kimball was not adequately represented at trial, and dismissed his other claim, holding that it had no jurisdiction to consider the effectiveness of counsel on appeal from the denial of the new trial motion. We affirm the Superior Court's determination that trial counsel provided Kimball effective representation; but we reverse its denial of jurisdiction on petitioner's latter claim. To avoid unnecessary and repetitious relitigation of the issue of the effectiveness with which petitioner was represented on his appeal from the denial of his new trial motion, we examine the merits of that question. Concluding that in any event petitioner would not prevail on a reinstated appeal to this court, we order denial of his petition for post-conviction relief.

The current proceedings spring from a simple set of facts. Nearly a year after petitioner's conviction for murder, he met in prison a fellow inmate named Gerald McKenna, who claimed that one James Sneider was involved in the murder.

McKenna's story was that Sneider had told him two weeks after the murder that he didn't think petitioner had killed the victim, and that he (Sneider) had been at the victim's house on the night of the murder at 11:00 or 11:30 p.m., later than when petitioner admitted to having been there. McKenna also said that Sneider had had a large amount of money a week after the murder. McKenna's story, which never came to light during the murder investigation, was the sole basis for petitioner's 1982 motion for a new trial. In his current petition, Kimball asserts that his appointed trial counsel's failure to discover McKenna's testimony amounted to depriving him of counsel. He argues, in addition, that his new trial motion counsel's failure to provide the Law Court on appeal with a trial transcript also amounted to ineffective assistance of counsel.

### I. *Trial Counsel*

 We established in *Lang v. Murch*, 438 A.2d 914, 915 (Me.1981), a "reasonably competent assistance" standard for evaluating the effectiveness of court-appointed trial counsel. That standard involves a two-prong inquiry: first, whether there has been serious incompetency, inefficiency, or inattention of counsel amounting to performance measurably below what "might be expected from an ordinary fallible attorney"; and second, whether any such ineffective representation "likely deprived the defendant of an otherwise available substantial ground of defense." In the recent case of *Strickland v. Washington*, —— U.S. ——, ——, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, 693 (1984), the Supreme Court adopted a virtually identical test to determine whether the assistance of counsel fell below the level guaranteed by the sixth amendment. Defense counsel has a duty to conduct a "reasonable amount" of pretrial investigation, although that amount cannot be quantified precisely. *Pierce v. State*, 463 A.2d 756, 759 (Me.1983). The reasonableness of an investigation is to be

---

1. In 1981 the Appellate Division of the Supreme Judicial Court also denied petitioner's appeal of his prison sentence of 45 years. *State v. Kimball*, AD 80–1 (Me.App.Div. March 20, 1981).

evaluated not through hindsight but from the perspective of the attorney when he was conducting it. Tactical decisions made by trial counsel are to be accorded "great deference" and will be reviewed only for "manifest unreasonableness," that is, only to determine whether they resulted in a loss of a substantial ground of defense. *Id.* at 759–60. "Counsel's ineptitude must exceed by far mere errors of judgment which may be disclosed by subsequent events or hindsight." *True v. State,* 457 A.2d 793, 796 (Me.1983). The conclusions of the post-conviction court as to the effectiveness of trial counsel will be reversed only when clearly erroneous. *Id.* at 795.

■ Petitioner's complaint against his trial attorneys is that they should have located and interviewed McKenna as one of Sneider's friends. Petitioner refuses to recognize that trial counsel had no reason to track down Sneider's friends. Although some suspicion initially focused on Sneider when a witness claimed to have seen the kind of car Sneider drove, a blue Volkswagen, heading up to the victim's house on the night of the murder, that suspicion evaporated when the witness realized that he must have seen the car on the night before the murder since he was at work at a mill on the night of the murder. Beyond the fact that Sneider discovered the victim's body the day after the murder, counsel had no reason to believe that Sneider had any involvement in the crime. McKenna himself never came into the picture at all except for the inclusion of his name on a list of the victim's acquaintances.

Trial counsel had a limited budget for investigation, and believed it necessary to investigate a number of unusual circumstances in the case such as the presence of a 20-gauge shotgun shell and an unexplained tire track at the murder scene. Their choice to pursue those matters rather than to investigate Sneider further or to locate McKenna, neither of whom appeared to be involved in the crime, was properly accorded deference by the post-conviction justice.

■ Furthermore, most of the testimony that might have been elicited from McKenna would, as recognized by the new trial motion justice, have been useful at trial only to impeach the testimony of Sneider, who appeared as a witness. Such a failure to obtain impeaching testimony does not satisfy the second part of the *Lang* test, that counsel's ineffectiveness must have deprived the defendant of a substantial ground of defense. *See Doucette v. State,* 463 A.2d 741, 745–46 (Me.1983).

Petitioner fails to present anything for our review that demonstrates a clear error in the Superior Court's determination that petitioner's trial counsel provided him with effective representation.

II. *New Trial Motion Counsel*

Petitioner was represented on his motion for new trial and on appeal from its denial by an appointed attorney different from those who had represented him at trial. The Superior Court justice hearing the post-conviction petition refused to rule on the effectiveness of new trial motion counsel, holding that, by this court's decision in *McEachern v. State,* 456 A.2d 886 (Me. 1983), jurisdiction does not lie in a post-conviction proceeding to review the regularity of proceedings on a motion for new trial. We now hold that the post-conviction justice erred in thus denying jurisdiction. *McEachern* does not control the case at bar.

In *McEachern* the petitioner in a second post-conviction review proceeding sought review of alleged errors in an earlier post-conviction review proceeding. We held that petitioner McEachern failed to bring himself within the jurisdictional prerequisites laid down by 15 M.R.S.A. § 2124 [2]

**2.** 15 M.R.S.A. § 2124 (Supp.1984–1985) provides in pertinent part:

An action for post-conviction review of a criminal judgment of this State or of a post-

sentencing proceeding following the criminal judgment, may be brought if the person seeking relief demonstrates that the challenged criminal judgment or post-sentencing pro-

"for post-conviction review of a criminal judgment of this State or of a post-sentencing proceeding...." Since petitioner McEachern was challenging the validity of his first post-conviction review proceeding, we observed:

> Petitioner does not argue, *nor could he argue*, that he is challenging the underlying criminal conviction.

(Emphasis added) 456 A.2d at 890. We then went on to hold that the first post-conviction proceeding did not qualify as "a post-sentencing proceeding" within the definition of 15 M.R.S.A. § 2121(2) (Supp. 1984–1985) because it could not directly affect the existence or length of incarceration. 456 A.2d at 890. The foregoing statement of the holding of *McEachern* reveals its inapplicability to the case at bar. Here petitioner Kimball *is* arguing, *and he can successfully argue*, that by challenging the new trial motion proceedings he is indeed challenging the underlying criminal conviction.

■■■ The fact that a challenge to the validity of proceedings on a new trial motion constitutes a challenge to the criminal judgment within the intendment of section 2124 becomes clear upon a consideration of the position occupied by a new trial motion in the trial court processes. A motion for a new trial may be made at any time within limits prescribed by M.R.Crim.P. 33; and the justice who presided at trial, if available, is assigned to hear and decide the motion. Cluchey & Seitzinger, *Maine Criminal Practice,* § 33.1, at 33–4 (1985). Until the prescribed time periods have run and any timely filed motions for a new trial have been disposed of, the trial court retains the power to modify its criminal judg-

ment. Furthermore, an appeal from the criminal judgment, whenever taken, preserves for review any claim of error in the order entered by the trial court on the new trial motion and other post-judgment motions. M.R.Crim.P. 37(c). In short, the Maine Rules of Criminal Procedure make the new trial motion an integral part of the trial court processes, of which a criminal judgment is the ultimate end product. That criminal judgment, after it is beyond the power of the trial justice to change it, is subject to review both directly and collaterally. Review of a criminal judgment on direct appeal extends to examination of a claim of ineffective assistance of counsel on a new trial motion, provided that the record is adequate for review of that issue without further evidentiary hearings.[3] In authorizing "[a]n action for post-conviction review of a criminal judgment," section 2124 plainly encompasses in terms both direct and collateral review,[4] and no reason exists in logic why the collateral review of a criminal judgment should not extend to a new trial motion in exactly the same way as review on direct appeal does. *McEachern* had nothing to do with the scope of post-conviction review of a criminal judgment and does not stand in the way of giving section 2124 the meaning that its words and its context dictate. We conclude that post-conviction review of a criminal judgment encompasses a review of the entire trial court processes culminating in that criminal judgment, including proceedings on timely filed post-judgment motions.

■■■ Our conclusion is reinforced by the fact that Kimball's petition for post-conviction review of the effectiveness of his new

---

ceeding is causing a present restraint or other specified impediment as described in subsections 1 to 3:

....

**3.** Ordinarily, of course, the record on appeal is not adequate for reviewing the counsel issue, so that the claim of ineffective assistance must be presented and tried in a collateral review proceeding. For a general discussion, see Cluchey & Seitzinger, *Maine Criminal Practice* § 37.10, at 37–48 to –49 (1985).

**4.** The intended breadth of the term "post-conviction review of a criminal judgment" to include direct appeals is emphasized by the provision of section 2122 explicitly excepting "direct appeals from a criminal judgment" from the declaration that "[t]his chapter shall provide a comprehensive and ... the exclusive method of review of those criminal judgments...." 15 M.R.S.A. § 2122 (Supp.1984–1985).

trial motion counsel would have been recognized in a petition for a writ of habeas corpus at common law. *See, e.g., Maddox v. Seay,* 243 Ga. 793, 256 S.E.2d 904 (1979) (reviewing, on appeal from an order denying a petition for a writ of habeas corpus, the effectiveness of counsel on a motion for new trial). That fact alone requires that post-conviction review be available in this case, since art. I, § 10 of the Maine Constitution forbids suspension of the privilege of the writ of habeas corpus, and since statutory post-conviction review completely "replaces the remedies available pursuant to post-conviction habeas corpus, to the extent that review of a criminal conviction or proceedings were reviewable...." 15 M.R.S.A. § 2122. The post-conviction statute itself provides "that this chapter shall provide and shall be construed to provide such relief for those persons required to use this chapter as is required by the Constitution of Maine, Article I, Section 10." *Id.*

 Petitioner's right to effective assistance of counsel on appeal from the denial of his new trial motion flows by extension from his right to such counsel at the trial court level, and from the well-known principle that once a state chooses to provide appellate review of a class of proceedings, it must furnish counsel to indigents who wish to exercise their right to appeal. *See Griffin v. Illinois,* 351 U.S. 12, 18, 76 S.Ct. 585, 590, 100 L.Ed. 891 (1956). In giving convicted defendants the right to move for a new trial and the right to appeal from the denial thereof, no state may discriminate against some of those defendants on account of their poverty. *See id.* The post-conviction justice should have reviewed the performance on appeal of Kimball's new trial motion counsel; his failure to do so was error.

In the usual case, upon reaching the foregoing conclusion we would simply remand the case for a determination by the Superior Court of the effectiveness on appeal of petitioner's new trial motion counsel. The particular nature of this case,

however, allows us to proceed to resolution of the merits of petitioner's claim without further ado. Were we now to remand the case for further post-conviction proceedings, the post-conviction justice would entertain two questions. He would inquire, first, whether the failure of petitioner's new trial motion counsel to provide a trial transcript to the Law Court on appeal from the denial of the new trial motion amounted to performance measurably below what "might be expected from an ordinary fallible attorney." *Lang v. Murch,* 438 A.2d at 915. *Cf. Evitts v. Lucey,* —— U.S. ——, 105 S.Ct. 830, 83 L.Ed.2d 821 (1985) (counsel's failure to file a required statement of appeal constituted ineffective assistance). He would also determine whether, in his judgment, the outcome of that appeal would likely have been different had the Law Court had the trial transcript before it at that time. Whichever way he decided those questions, the case would doubtless come up on appeal once again for our final decision whether the presence of the trial transcript would likely have changed the result of the appeal from the denial of Kimball's new trial motion.

We are in a much better position than is any justice of the Superior Court to determine how the Law Court would have been affected by the presence of the trial transcript on appeal from the denial of the new trial motion. Furthermore, by avoiding the remand followed by an almost certain fourth appeal to this court, all to resolve the same simple factual issue, we promote judicial economy. We accordingly examine the merits of Kimball's appeal that was denied in *State v. Lord.*

 With the trial transcript before him, the Superior Court justice hearing Kimball's motion for a new trial on the ground of newly discovered evidence denied that motion, because the new evidence "would not probably change the result if a new trial were held with this additional evidence." To prevail on appeal, Kimball would have to show that that factual determination was clearly erroneous. *See State*

v. *Pierce*, 438 A.2d 247, 253 (Me.1981). We conclude from an examination of the whole record, and a review of the appellate briefs filed in *State v. Lord*, that petitioner would not have persuaded us to reach a different result on that appeal even if we had had the trial transcript before us at that time.

The overwhelming trial evidence supporting the guilt of Kimball and Lord of murdering Frank Carkin is set forth *in extenso* in *State v. Kimball*, 424 A.2d at 686–88, and need not be repeated in full here. Suffice it now to say that, in addition to detailed evidence from a third party that the two co-defendants laid plans to rob Carkin and went to Carkin's house for that purpose about 9:00 o'clock on the evening he was killed, Kimball later made several self-incriminating statements, such as that "Randy [Lord] just totalled him [Carkin]"; that he, Kimball, had $250 of Carkin's money that he had to get rid of, and that "they ought to go back and cut [Carkin's] throat and make sure he was dead." In the face of that highly incriminating evidence, the "newly discovered evidence" on which Kimball relied in seeking a new trial was remote and inconclusive; the motion justice appropriately could have viewed it as falling far short of raising a probability that a new trial would produce a different verdict. The only witness at the hearing on the motion for new trial was Gerald McKenna, Jr., an inmate at Maine State Prison, who testified as set out above regarding Sneider's suspicious statements and his possession of a large amount of cash despite his unemployment for several months. McKenna's testimony contradicted some of the testimony given by Sneider at the Kimball and Lord trial; but even so, the motion justice was not clearly wrong in finding it improbable that McKenna's testimony would have raised a reasonable doubt of petitioner's guilt in the minds of the jurors. *See Doucette v. State*, 463 A.2d 741.

In conclusion, petitioner Kimball would not have prevailed on his appeal from denial of his new trial motion, even if the trial transcript had been before the Law Court. Therefore, as a matter of law he is entitled to no relief on his petition for post-conviction review alleging ineffective assistance of counsel on that appeal.

Accordingly, the entry is:

The Superior Court's ruling that petitioner had effective assistance of counsel at trial is affirmed; the dismissal of petitioner's claim of ineffective assistance of new trial motion counsel on appeal is vacated; and the case is remanded to the Superior Court for entry of judgment denying the petition for post-conviction review.

All concurring.